**UNITED STATES COURT OF APPEALS**

**FIFTH CIRCUIT**

_____

No. 00-50512

_____

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

versus

DAVID LANDEROS - ARREOLA,

                    Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

July 27, 2001

Before POLITZ and EMILIO M. GARZA, Circuit Judges, and KAZEN[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

David Landeros-Arreola ("Landeros") pleaded guilty to re-entering the United States illegally, in violation of 8 U.S.C. § 1326. At sentencing, the district court determined that Landeros's prior Colorado felony conviction for menacing constituted an aggravated felony, which subjected him to U.S.S.G. § 2L1.2's[1] penalty enhancement. On appeal, Landeros challenges this determination.

_____

[*]       District Judge of the Southern District of Texas, sitting by designation.

[1]       U.S.S.G. § 2L1.2, Unlawfully Entering or Remaining in the United States, provides:

1

Additionally, Landeros asserts that his sentence violated his due process rights because it exceeded the statutory maximum sentence, or, alternatively, that § 1326(b)(2) is an "unconstitutional sentencing enhancement."

The pre-sentence report treated Landeros's menacing conviction as an aggravated felony, increasing Landeros's base offense level by sixteen and adding three points to his criminal history. Landeros objected to the sentencing report's enhancement on the ground that his prior conviction was not an aggravated felony because his sentence, which was originally four years' imprisonment, was subsequently reduced to less than a year.[2]  Landeros pointed out that after he completed a state "military bootcamp" for inmates, i.e., Colorado's Regimented Inmate Training Program ("RITP"), the state court issued the following order entitled "RECONSIDERATION OF SENTENCE":

> THIS MATTER comes before the Court this date regarding reconsideration of sentence.  The Defendant has completed the [RITP] and may now be released to immigration authorities.  If Defendant is deported and returns to the United States legally within 12 months, upon his return to the United States he is to contact Morgan County, Colorado probation department and be placed on probation for a period of 18 months under the usual terms and conditions, including evaluation and placement on intensive Supervised Probation if acceptable.

According to Landeros, the order, which the court issued eight months after Landeros was sentenced and before he was deported, reduced his term of imprisonment to less than one year.  Therefore,

---

(a)      Base Offense Level: 8
(b)      Specific Offense Characteristic
    (1)      If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase as follow (if more than one applies, use the greater):
        (A)      If the conviction was for an aggravated felony, increase by 16.

[2]      Landeros also pleaded guilty to one count of sexual assault for which he received a concurrent six month sentence.

Landeros argued that his conviction did not constitute an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(F),[3] and his sentence could not be enhanced on that basis.

In an addendum to the pre-sentence report, the probation officer responded that Sentencing Guideline § 4A1.2(b) provides that the length of a prior sentence is determined by the term imposed, not the time served, and the term imposed on Landeros was four years. The officer also noted that a Colorado probation officer concurred in the proposed guideline calculations. Landeros again objected to these calculations.

At sentencing, the district court determined that the state court's order was similar to an early release, and did not constitute a change in the sentence. Although the district court noted that the Colorado court's "use of the word, reconsideration, clouds the issue somewhat," it found Landeros's position analogous to that of a federal prisoner who completes the Intensive Confinement Center Program ("ICC"), and is released to a "community confinement setting."

We review a district court's interpretation of "whether the sentencing guidelines apply to a prior conviction . . . de novo." *United States v. Vasquez-Balandran*, 76 F.3d 648, 649 (5th Cir. 1996). Our previous cases indicate that while we "examine[] [state law] for informational purposes, we are not constrained by a state's 'treatment of a felony conviction when we apply the federal-sentence enhancement provisions.'" *See Vasquez-Balandran*, 76 F.3d at 649 (5th Cir. 1996) (quoting *United States v. Morales*, 854 F.2d 65, 68 (5th Cir. 1988)). Thus, state law aids our analysis of the effect of the state court's sentence, but federal law determines whether the sentence constitutes a term

---

[3] 8 U.S.C. § 1101(a)(43)(F) provides,

The term "aggravated felony" means–
(F) a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year.

of imprisonment for purposes of the aggravated felony enhancement.

Pursuant to § 2L1.2 of the Sentencing Guidelines, a defendant's base offense level is enhanced by sixteen for unlawfully entering the United States if the defendant was previously deported after a conviction for an aggravated felony. *See* § 2L1.2(b)(1)(A). 8 U.S.C. § 1101(a)(43)(F) defines an aggravated felony as "a crime of violence for which the term of imprisonment [is] at least one year." The phrase "term of imprisonment" refers to "the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment."[4] 8 U.S.C. § 1101(a)(48)(B); *see United States v. Yanez-Huerta*, 207 F.3d 746 (5th Cir. 2000) (suspended sentence counts for enhancement purposes); *United States v. Vasquez-Balandran*, 76 F.3d 648 (5th Cir. 1996) (including an assessed sentence within the definition of "term of imprisonment" as it was equivalent to a suspended sentence); *see also United States v. Galvan-Rodriguez*, 169 F.3d 217, 218 (5th Cir. 1999) (including a "sentence[] to five years deferred adjudication" as an aggravated felony under a prior version of § 2L1.2). However, the enhancement does not apply "when a defendant is directly sentenced to probation, with no mention of suspension of a term of imprisonment." *United States v. Banda-Zamora*, 178 F.3d 728, 730 (5th Cir. 1999); *see Herrera-Solorzano*, 114 F.3d at 50 (noting that a sentence to probation prior to a sentence to imprisonment does not constitute a term of imprisonment).

Landeros maintains that the Colorado court, pursuant to the RITP Act and Rule 35(b)[5],

---

[4]    While § 2L1.2 does not define the phrase, "term of imprisonment," nor reference a section providing that definition, we have previously found that § 1101(a)(48)(B)'s definition applies. *See United States v. Yanez-Huerta*, 207 F.3d 746, 749 (5th Cir. 2000).

[5]    The RITP Act, Colo. Rev. Stat. 17-27.7-104 (1994) provides in pertinent part:

If an offender successfully completes a regimented inmate training program, such offender, within sixty days of termination or completion of the program, shall automatically be referred to the court

4

reduced his sentence from imprisonment to probation, thereby removing his menacing conviction from the aggravated felony definition because his term of imprisonment was for less than a year. The government concedes that Landeros received a reduction in sentence, but contends that this reduction operated like a suspension of the execution of Landeros's sentence. We agree that Landeros's sentence was reduced. We, however, hold that it was reduced from imprisonment to probation, and no suspension of sentence occurred.

In Colorado, certain criminal defendants are eligible for placement in an RITP. The RITP Act, Colo. Rev. Stat. 17-27.7-104 (1994), is entitled "Acceptance and completion of the program by an offender--*reconsideration of sentence*." (emphasis added). *See United States v. Marek*, 238 F.3d 310, 321 (5th Cir. 2001) (title of a statute may be taken into consideration to resolve uncertainties); *People v. Zapotocky*, 869 P.2d 1234, 1238 (Colo. 1994) (same in Colorado). Under the RITP Act a defendant who successfully completes an RITP is "automatically referred to the sentencing court so that [he] may make a motion for [a] reduction of sentence pursuant to [R]ule 35b of the Colorado rules of criminal procedure." Colorado Rule 35(b), which is similar to a former version of Federal Rule of Criminal Procedure 35(b), "permits a court one opportunity to reconsider . . . a previously

which sentenced such offender so that he may make a motion for reduction of sentence pursuant to [R]ule 35(b) of the Colorado rules of criminal procedure.

Colorado Rule 35(b) provides:

(b)    Reduction of Sentence. The court may reduce the sentence provided that a motion for reduction of sentence is filed (1) within 120 days after the sentence is imposed, or (2) within 120 days after receipt by the court of a remittitur issued upon affirmance of the judgment or sentence or dismissal of the appeal, or (3) within 120 days after entry of any order or judgment of the appellate court denying review or having the effect of upholding a judgment of conviction or sentence. The court may, after considering the motion and supporting documents, if any, deny the motion without a hearing. The court may reduce a sentence on its own initiative within any of the above periods of time.

5

imposed sentence . . . and, in the exercise of sound judicial discretion, to re-sentence the defendant to a lesser term within the statutory limits." *People v. Fuqua*, 764 P.2d 56, 60 (Colo. 1988).

In the case *sub judice*, the Colorado court referred to the order in dispute as a "reconsideration of sentence," t he same terminology as used in the title of the RITP Act. Additionally, the court noted that Landeros had completed an RITP program, which is the prerequisite for relief under the RITP Act. While the court did not specifically state that it was reducing Landeros's sentence to probation, this is the type of relief the RITP Act affords and the government concedes that a reduction occurred.[6] *See* Colo. Rev. Stat. 17-27.7-104 (1993) (a court may "issue an order modifying the offender's sentence and placing the offender on probation or in a community corrections program"). Thus, pursuant to the RITP and Rule 35(b), the court reduced Landeros's sent ence from a term of imprisonment to a less severe form of punishment, namely probation.[7] *See People v. Santana*, 961 P.2d 498, 499 (Colo. Ct. App. 1997) (finding that a modification of sentence from two-and-a-half-years' imprisonment to eight years' probation is a

---

[6] We do not agree, nor does the government, with the district court's analogy of the RITP to the ICC. While both programs are administered by the prison authorities, under the ICC program, the Bureau of Prisons, an executive agency, is authorized to alter the terms of the prisoner's confinement or reduce the amount of time served. *See* 28 C.F.R. § 524.32. In Colorado, however, the sentencing court determines whether a defendant's sentence should be reconsidered and reduced. *See* Colo. Rev. Stat. 17-27.7-104 (1993).

[7] There was some discussion at oral argument as to whether the Colorado court had the authority to reduce Landeros's sentence to less than a year because of the minimum presumptive sentence set out in Col. Rev. Stat. § 18-1-105 (1994). Under Colorado law, the minimum sentence in the presumptive range for Landeros's menacing conviction was a one year term of imprisonment. *See* Col. Rev. Stat. § 18-1-105(1)(a)(IV). The court, however, had the authority to sentence below this minimum. *See* § 18-1-105(6) (allowing deviation from the presumptive range if the court finds extraordinary mitigating or aggravating circumstances); *see also People v. Smith*, 971 P.2d 1056, 1057, 1060 (Colo. 1999) (noting that the RITP "encourage[s] sentence reduction [in order to] serv[e] the general assembly's stated intent 'that the RITP shall benefit the state by reducing prison overcrowding," but holding that a court that is reducing a sentence pursuant to the RITP can only reduce the sentence "to a lesser term within the statutory limits"); *Keller v. People*, No. 99SC270, 2000 WL 1336018 (Colo. 2000) (unpublished) (RITP provides courts with "the special authority to *reconsider sentences to imprisonment*") (emphasis added); Col. Rev. Stat. § 17-27.7-104 (1994) (after completion of an RITP an offender may be placed on community corrections or probation). In the present case, the Colorado court found that Landeros had completed the RITP program, and, thus, reduced Landeros's sentence to probation.

6

permissible reduction under Rule 35(b)).

The government asserts that this reduction was in effect a suspension of the execution of sentence, or, stated differently, Landeros's term of imprisonment was held in abeyance while he was on probation, but could be reinstated if Landeros breached a condition of his probation. We, however, believe that Landeros's sentence was reduced from imprisonment to probation. This conclusion is borne out by both Colorado and federal law. First, under Colorado law, the Colorado court could not have legally reduced Landeros sentence to probation and suspended his term of imprisonment. Colorado treats "probation as a form of sentence" distinct from imprisonment.[8] *People v. Turner*, 644 P.2d 951, 953 (Colo. 1982); *People v. Flenniken*, 749 P.2d 395, 397 (Colo. 1988) (imprisonment and probation are sentencing alternatives); Colo. Rev. Stat. 16-11-101(1994). The Colorado Supreme Court has interpreted this to mean that courts are precluded from "impos[ing] a sentence of imprisonment, suspend[ing] that sentence, and then sentenc[ing] a defendant to a term of probation. A court may either grant probation or impose a prison term; it may not authorize both in the same instance." *Montoya v. People*, 864 P.2d 1093, 1095 n.4 (Colo. 1994) *citing Flenniken*, 749 P.2d 395 (Colo. 1988) (sentence to term of imprisonment, which is suspended and followed by a sentence to probation is illegal); *People v. District Court*, 673 P.2d 991, 996 (Colo. 1983) (court "cannot circumvent legislative dictates by sentencing within prescribed parameters, suspending the sentence, and then imposing conditions which are authorized only in connection with probation"); Colo. Rev. Stat. 16-11-101 (providing that a court may sentence a defendant to probation or imprisonment). As "we are not entitled to presume" that a Colorado court would not "do [its] duty

---

[8] While a Colorado court may not sentence a defendant to probation and imprisonment it may impose imprisonment as a *condition* of probation. *See People v. Horton*, 628 P.2d 117, 119 (Colo. 1981). For example, a court may require as a *condition* of probation a short period of incarceration.

7

under state law," we should not suppose, absent evidence to the contrary, that the Colorado court imposed an illegal sentence. *Barnes v. Miss.*, 992 F.2d 1335, 1342 (5th Cir. 1993); *see also United States v. Holmes*, 822 F.2d 481, 489 (5th Cir. 1987) (noting that we presume that the experienced district judge was aware of the well established Circuit law and acted accordingly); *cf. Chapman v. Nat'l Aeronautics & Space Admin.*, 736 F.2d 238, (5th Cir. 1984) (in the context of a prior panel's ruling we stated "when, as here, the previous court's ruling is unclear or open to conflicting interpretations, we presume that the ruling was not erroneous and was otherwise in accordance with law").

Our presumption that the court acted legally is supported by the text of the court's order and Colorado Rule 35(b). In its order, the court did not mention Landeros's term of imprisonment, nor state that it was suspending Landeros's sentence. *See United States v. Martinez-Villalva*, 232 F.3d 1329, 1333 (10th Cir. 2000) (holding that sentence to imprisonment which the court modified to probation was not sufficient to prove a suspension occurred as the court's order did not mention suspension of sentence, and no other evidence was presented that indicated the sentence was suspended). The text of Colorado Rule 35(b) also does not indicate that a suspension of sentence occurs when a sentence to a term of imprisonment is reduced to a term of probation. Consequently, nothing suggests that the Colorado court suspended Landeros's term of imprisonment when it reduced Landeros's sentence from a term of imprisonment to a term of probation.

Furthermore, even in the federal system a Rule 35(b) reduction of sentence from imprisonment to probation does not involve a suspension of sentence. While at one time federal law required that federal courts grant probation only in conjunction with a suspension of sentence, see 18 U.S.C. § 3651 *et seq.*, this requirement was abolished for all federal offenses committed after 1987, see Pub.L.

8

98-473, Title II, § § 212(a)(1), (2) 253(a)(1), (2), Oct. 12, 1984, 98 Stat. 1987, 2031, and probation became a separate form of sentence. *See* 18 U.S.C. § 3551(b) (providing that defendants found guilty of a federal offense may be sentenced to: a term of probation; pay a fine; or a term of imprisonment, with a sentence to pay a fine capable of being imposed with other sentences); 18 U.S.C. § 3561 (a defendant may be "sentenced to a term of probation unless. . .the defendant is sentenced at the same time to a term of imprisonment"); 18 U.S.C. § 3565 (providing that upon violation of probation a court may continue the defendant's probation or may re-sentence the defendant). We have not found any cases since the repeal of § 3651 that indicate that a Rule 35(b) reduction of sentence to probation is in effect a suspension of sentence, and the text of Rule 35(b) at the time Landeros was sentenced did not state that a reduction of sentence to probation required that the term of imprisonment be suspended. Because Landeros's sentence was reduced from a potentially qualifying term of imprisonment to probation, and we have found nothing to support holding that the Colorado court's reduction of Landeros's sentence was effectively a suspension of sentence, his prior conviction does not meet the federal definition of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(F).

Our precedent accords with this holding. While our prior cases indicate that defendants who receive suspended sentences or "who avoid a determined period of incarceration by a process which suspends serving the term of imprisonment" remain subject to the aggravated felony definition, our prior cases do not intimate that a modification of a defendant's term of imprisonment to probation via Rule 35(b) constitutes a suspension of sentence. For instance, in *Vasquez-Balandran* we were required to determine whether a term of imprisonment was imposed when a Texas defendant was assessed a term of imprisonment but the sentence was not immediately imposed, and probation was

9

granted. 76 F.3d at 650.[9] Although Texas treats assessed sentences differently from imposed sentences, we declined to follow this distinction because we found that Vasquez-Balandran's assessed sentence, which was held in abeyance in lieu of probation, was effectively a suspended sentence that should be included in the term of imprisonment calculation. *Id.* at 650-51. *See also United States v. Ramos-Garcia*, 95 F.3d 369, 371-72 (5th Cir. 1996) ("Ramos-Garcia's five year probation *under Texas's sentencing procedure* fulfills the . . . 'term of imprisonment imposed' requirement") (emphasis added).

Vasquez-Balandran's sentence differs, however, from Landeros's sentence: Vasquez-Balandran's term of imprisonment was imposed and then suspended, thus subjecting Vasquez-Balandran to service of that sentence if he violated the terms imposed by the court. Conversely in Landeros's case, the court imposed a four year term of imprisonment but, thereafter, intervened and reduced the sentence imposed from one of imprisonment to one of probation. As a consequence, nothing remained of the original term of imprisonment for the court to suspend.

The government also argues that if we find that Landeros's term of imprisonment was not suspended we should add Landeros's probationary term to his term of imprisonment, and hold that Landeros was subject to a term of imprisonment of at least a year. The government provides no support for this argument, and we have found none. As previously noted, both imprisonment and probation are authorized sentences under Title 18, and probation is recognized as an "alternative to incarceration" in the Sentencing Guidelines. *See* 18 U.S.C. § 3551(b); U.S.S.G. § 5B1.1. We see

---

[9] Texas, unlike Colorado, authorizes a grant of probation in conjunction with suspension of sentence. *See Vasquez-Balandran*, 76 F.3d at 650 (recognizing that under certain circumstances Texas provides for "assessment" of sentence and grant of probation); *Speth v. Texas*, 6 S.W.3d 530 (Tex. Crim. App. 1999) (citing statute that provides for community supervision/probation to be granted with suspension of sentence).

no reason why a term of probation should be considered as part of a term of imprisonment when Title 18 and the Sentencing Guidelines distinguish between the two. *See United States v. Phipps*, 68 F.3d 159, 161 (7th Cir. 1995) (imprisonment "denote[s] time spent in a penal institution," and Guidelines reference to imprisonment separate from home detention indicates that the "Guidelines distinguish [between] the two"). Moreover, we have previously stated that a direct sentence to probation does not constitute a "term of imprisonment" for purposes of determining whether a prior conviction is an aggravated felony. *See Banda-Zamora*, 178 F.3d at 730. Therefore, we decline to accept the government's invitation to combine Landeros's term of probation with his term of imprisonment.

We hold that Landeros's menacing conviction does not meet the aggravated felony definition. For this reason we do not address Landeros's other arguments, and we REVERSE and REMAND for re-sentencing consistent with this opinion.

KAZEN, Chief District Judge, dissenting:

While I agree with much of the majority opinion, I cannot agree with the ultimate holding. Many of the pertinent facts are undisputed. In 1992, this defendant was arrested and charged in a Colorado state court with the crimes of menacing and sexual assault. He pleaded guilty to both charges, and received a four-year prison sentence for the menacing charge and a six-month sentence for the assault charge. The sentence in the menacing charge qualified as an aggravated felony under federal law. 8 U.S.C. §1101(a)(43)(F). The Colorado court recommended the defendant for the RITP, the Colorado version of a "military boot camp." Upon defendant's completion of that program, the state court entered the order now in dispute. That order was signed on July 25, 1994.

I agree with the majority that the phrase "term of imprisonment" refers to the period of incarceration or confinement ordered by the court, regardless of any suspension of the execution of that imprisonment. 8 U.S.C. §1101(a)(48)(B). I further agree that we are not constrained by a state's treatment of a felony conviction in applying the federal sentence enhancement provisions, and that federal law determines whether a sentence imposes a term of imprisonment for purposes of the aggravated felony enhancement.

My disagreement is with the majority's ultimate holding that the 1994 Colorado order reduced defendant's sentence "from

12

imprisonment to probation."  That order in its entirety reads as follows:

>     THIS MATTER comes before the Court this date regarding reconsideration of sentence.  The Defendant has completed the regimented inmate training program and <u>may now be released to immigration authorities</u>.  <u>If Defendant is deported and returns to the United States legally within 12 months</u>, upon his return to the United States he is to contact the Morgan County, Colorado probation department and be placed on probation for a period of 18 months under the usual terms and conditions, including evaluation and placement on Intensive Supervised Probation if acceptable.  (Emphasis added)

The majority opinion acknowledges that the Colorado court "did not specifically state that it was reducing Landeros's sentence to probation," but concludes that this is the meaning of the order because probation "is the type of relief the RITP Act affords." The majority bolsters its conclusion with the proposition that, under Colorado law, probation is a distinct type of sentence and that a court may not grant probation and impose a prison term in the same order.  While that proposition may be true, it does not control here.

Even a cursory reading of the 1994 order reveals that it does not purport to place the defendant on probation.  Indeed, it is instructive that the defendant has never argued that he was placed on probation.  Throughout his appellate brief, and also in the trial court, defendant instead has maintained that the effect of the 1994 order was to reduce his term of imprisonment from four years to eight months.  The 1994 order refers to probation only as a future possibility if three conditions were met: the defendant

13

would be deported, he would thereafter return to the United States legally, and he would do so within 12 months.  Only two of the three conditions were met.  Defendant was deported in 1994.  However, his only known return to this country was not until February 2000, almost six years later.  Moreover, his return was illegal, which is why he was prosecuted in federal court.

The 1994 order clearly does not place the defendant on probation upon release from confinement.  Instead, it dictates that the defendant "may now be released to immigration authorities."  In my opinion, the effect of this order was that the balance of defendant's prison sentence was suspended to allow the defendant to be deported.  If that happened, and if he did not return within a year, his case would be closed.  In my experience, the early release of aliens from state prison sentences, concurrent with their delivery to immigration authorities for deportation, is not unusual, generally motivated by the desire to reduce the cost to the local taxpayers of continued incarceration.

For the foregoing reasons, I respectfully dissent and would affirm the judgment of the trial court.